# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | | |
|---|---|---|
| KARI LEMAY, | ) | |
| | ) | |
| **Plaintiff,** | ) | Case  No. EDCV08-01478  AJW |
| | ) | |
| v. | ) | **MEMORANDUM OF DECISION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| **Defendant.** | ) | |
| ———————————————— | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

## Administrative Proceedings

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. Plaintiff alleged disability beginning on November 21, 2003 due to back, leg, and neck injuries. [Administrative Record ("AR")  81-82].  The Administrative Law Judge ("ALJ") denied benefits in an October 25, 2006 written hearing decision.  [AR 21-26; JS 2].  The ALJ found that plaintiff had severe impairments consisting of slight to mild disc bulges at C3-4, C4-5, and C6-7; mild left C6 radiculopathy; old anterior compression of the 12th dorsal vertebral body; degenerative disc disease at the L5-S1 level;

1  degenerative disc disease with a mild disc bulge at the L3-4 level; and obesity. [AR 23-24]. The ALJ
2  further found that plaintiff retained the residual functional capacity ("RFC") to perform light work with no
3  more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. The ALJ concluded
4  that plaintiff was not disabled because her RFC did not preclude performance of her past relevant work as
5  a senior account manager for a telephone company. [AR 26].   After considering additional evidence
6  submitted by plaintiff, the Appeals Council denied plaintiff's request for review of the ALJ's decision. [JS
7  2].

8  **Standard of Review**

9      The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial
10 evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.
11 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than
12 a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.
13 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
14 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is
15 required to review the record as a whole and to consider evidence detracting from the decision as well as
16 evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);
17 Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than
18 one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
19 Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

20 **Discussion**

21 **Medical opinion evidence**

22     Plaintiff contends that the ALJ erred in rejecting the opinions of a treating orthopedist, Dr. Victor
23 Gallardo, and an examining orthopedist, Dr. Ralph Steiger, in favor of the opinion of a nonexamining non-
24 examining state agency physician, Dr. David Haaland. [See JS 5-17].

25     A treating physician's opinion is not binding on the Commissioner with respect to the existence of
26 an impairment or the ultimate issue of disability.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.
27 2001).  Where, however, a treating physician's medical opinion as to the nature and severity of an
28 individual's impairment is well-supported and not inconsistent with other substantial evidence in the record,

1    that opinion is entitled to controlling weight.  Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir.  2001);

2    Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.  2001); see 20 C.F.R. §§ 404.1527(d)(2),

3    416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2.  Even when not entitled

4    to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed"

5    in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and

6    extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other

7    evidence in the record; and (6) the area of specialization.  Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-

8    2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

9        If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons,

10   supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If

11   contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific

12   and legitimate reasons that are based on substantial evidence in the record.  Batson v. Comm'r of Soc. Sec.

13   Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d

14   821, 830-831 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by itself constitute

15   substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating

16   physician." Lester, 81 F.3d at 831.

17       Dr. Gallardo's narrative reports and progress notes indicate that he began treating plaintiff for

18   "routine problems" in 1964, when she was about seven, and that her "major problem," discogenic disease,

19   began in the early 1990s. [AR 168, 181]. Dr. Gallardo treated plaintiff for numerous orthopedic complaints

20   and injuries over the years, including "a severe injury to her back" [AR 181] sustained in a 1997 boating

21   accident and injuries she suffered in three auto accidents in 2005 (one in which she was rear-ended, one in

22   which she lost control of her car, which rolled over, and one in which she was struck as a pedestrian). [See

23   AR 148-201; see also AR 24-25, 42].

24       In November 2004, Dr. Gallardo wrote a narrative report describing plaintiff's treatment history and

25   orthopedic impairments. [AR181-183].  He opined that plaintiff was totally disabled due to: (1) cervical

26   spondylosis at C4-5 and C5-6, with intervertebral disc degeneration and herniation at C6-7; (2) lumbar

27   spondylosis with L4-5 and L5 intervertebral disc degeneration and herniation; (3) transitional S1 vertebral;

28   (4) healed compression fracture of T12 with degenerative spondylosis; (5) cervical and lumbar spinal

stenosis; (6) bilateral chondromalacia of the patella; and (7) right shoulder impingement syndrome. [AR 183].

In March 2005 and again in May 2005, Dr. Gallardo authored narrative reports describing plaintiff's impairments and recent examination findings. [AR 16-170]. He again opined that plaintiff was totally disabled due to the same impairments described his November 2004 report. [AR 160-170]. Dr. Gallardo also noted additional diagnoses of foraminal encroachment accompanying her C6-7 intervertebral disc degeneration and herniation at C6-7 and chronic migraine headaches. [AR 170].

In August 2005, Dr. Gallardo completed a "Multiple Impairment Questionnaire." He assessed exertional and nonexertional restrictions that would limit plaintiff to less than sedentary work. He also said that sustained work activity would increase plaintiff's symptoms, that she would need to frequently alternate positions and unscheduled breaks at unpredictable intervals, and that she was likely to be absent from work due to her impairments more than three times a month. [AR 140-147].

Plaintiff submitted additional medical records from 2006 and 2007 to the Appeals Council. Among these were treatment reports from Dr. Gallardo and another "Multiple Impairment Questionnaire" completed by him in October 2006. Dr. Gallardo described multiple orthopedic impairments resulting in disabling functional restrictions. [AR 388-395]. In the "additional comments" section of that questionnaire, Dr. Gallardo remarked:

> The prolong[ed] and repeated process in obtaining [plaintiff's] total disability status by governmental agencies has greatly affected this [patient's] mental and physical suffering. Conservative treatment has succeeded in avoid[ing] surgical intervention to this date - but I fear surgical intervention will one day be required.

[AR 394].

The record does not include the report of any consultative examination performed at the Commissioner's request.

On August 1, 2006, plaintiff was evaluated by a consultative orthopedist, Dr. Steiger, who elicited a history, performed an orthopedic examination, and reviewed electrodiagnostic studies and cervical and lumbar MRIs. [AR 339-346]. Dr. Steiger gave plaintiff diagnoses of: (1) musculoligamentous sprain of the cervical spine; (2) disc bulges of 1.5 millimeters at C3-4, 2 millimeters at C5-6, and 2 millimeters at C6-7;

(3) musculoligamentous sprain of the lumbar spine; (4) compression fracture at T12 (old); (5) disc bulge of 2 millimeters at L3-4; and (6) degenerative disc disease of the lumbar spine. [AR 345]. Dr. Steiger opined that plaintiff "has restrictions of the neck of no repetitive or prolonged neck movement and no heavy pushing or pulling. For the low back, no heavy lifting, repeated bending or stopping and no prolonged sitting." [AR 345]. Dr. Steiger also concluded that plaintiff "is unable to perform full time competitive work. This disability has last[ed] at least 12 months and is expected to continue indefinitely. The patient's condition is permanent, it will not change and will remain the same." [AR 345].

In a "Multiple Impairment Questionnaire," Dr. Steiger opined that plaintiff had exertional and nonexertional impairments that would limit her to less than sedentary work and that would cause her to miss work more than three days per month. [AR 331-338].

Dr. Haaland, the nonexamining state agency physician, completed a "Physical Residual Functional Capacity Assessment" dated November 9, 2004. [AR 118-125]. Dr. Haaland concluded that plaintiff had lumbar spine degenerative disk disease that limited her to light work. [AR 125].

The ALJ adopted Dr. Haaland's opinion. [AR 24]. The ALJ gave "little weight" to Dr. Gallardo's conclusions, calling them "exaggerated expressions of lack of function in light of electrodiagnostic evidence of no radiculopathy and no clinical evidence of any significant neurological deficits . . . ." [AR 25].

The ALJ's reasons for rejecting Dr. Gallardo's opinions are patently insufficient and lack substantial support in the record as a whole. It is true that an EMG/NCV study conducted in June 2005 showed "no evidence of lumbar radiculopathy," and that a lower extremity electrodiagnostic studies conducted in May 1999 were similarly normal. [AR 184, 193]. On the other hand, a June 1999 EMG/NCV study of "both upper limbs [was] abnormal and consistent with a left C6 radiculopathy, mild," consistent with plaintiff's contemporaneous neck complaints. [AR 182, 184-188].

The absence of evidence of significant radiculopathy is not a valid reason for the ALJ's sweeping rejection of Dr. Gallardo's findings and conclusions. Dr. Gallardo did not list radiculopathy as one of plaintiff's disabling conditions, so the absence of electrodiagnostic evidence of that condition does not undermine the validity of his opinion. Furthermore, Dr. Gallardo's reports include numerous citations to clinical findings and objective evidence, all of which he said were consistent with his diagnoses and opinions. Contrary to the ALJ's assertion, that evidence included clinical evidence of neurological deficits.

[See AR 140-201, 387-399, 512-514].  For example, Dr. Gallardo (and other specialists to whom he referred

plaintiff for consultation or treatment) documented moderately to markedly positive Lasegue's[1] and

Braggard's[2] signs; moderately positive Naffziger[3] test; moderately to markedly positive Ely's[4] test; and

moderately positive Spurling[5] test ("paraspinal percussion test").  [AR 153-155, 159, 161-163, 169, 193,

524]. In addition to neurological findings, the record includes numerous abnormal imaging studies (CAT

and bone scans, MRIs, and x-ray reports). [See, e.g., AR 162-164, 189-191, 195-200, 248-251, 530, 550-

553].  Dr. Gallardo also noted abnormalities on physical examination, such as tenderness and spasm of the

lumbar spine, sciatic nerve tenderness, and spinal range of motion restrictions. [See AR 153-156, 160-164,

168-170, 181-183].  Dr. Gallardo explicitly referenced these and other clinical findings to support his

diagnoses and functional assessments. [See, e.g., AR 388-389 (identifying positive clinical findings and

---

[1]   A positive Lasegue test (pain on straight leg raising) produces pain in the sciatic nerve and is significant for compression of the L4-L5 or L5-S1 spinal nerve roots, as with intervertebral disc rupture. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 18:4  (2008).

[2]   A positive Braggard's (also known as Fazersztajn) test produces pain in the sciatic nerve and is significant for lumbar spine disc protrusion or rupture. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th §§ 18:4, 18:6 (2008).

[3]   A positive Naffziger's test produces back or spinal nerve root pain and is significant for intervertebral disc protrusion or rupture. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th §§ 18:4, 18:6 (2008).

[4]   A positive Ely's sign or test results in the pelvis rising off the table when the leg is flexed at the knee while the patient is prone.  It is significant for sacro-iliac joint inflammation. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th §§ 18:4, 18:6 (2008).

[5]   A positive Spurling sign (paraspinal percussion test), which involves tapping each vertebra with a reflex hammer while the patient stands erect with back slightly flexed, produces pain in a vertebra and radiating down into a leg.  It is significant for spinal nerve root compression at the level of that vertebra. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th §§ 18:4, 18:6 (2008).

1   diagnostic test results supporting conclusions)].

2        Other factors enumerated in the regulations also weigh in favor of giving Dr. Gallardo's opinion
3   deference, or perhaps even controlling weight.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The length
4   of plaintiff's treatment relationship with him was extraordinarily long, in that he had treated her for
5   orthopedic problems during childhood and much of her adulthood. [See AR 181-183].  See Edlund, 253 F.3d
6   at 1157 (noting that "treating physicians are employed to cure and thus have a greater opportunity to know
7   and observe the patient as an individual. . . . .") (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.
8   1996) and citing SSR 96-2p, 1996 WL 374188)); Lester, 81 F.3d at 833 (noting that the treating physicians'
9   "continuing relationship with the claimant" makes them especially qualified to form an overall conclusion
10  as to functional capacities and limitations).   Dr. Gallardo reported that he saw plaintiff monthly or
11  bimonthly, giving him frequent opportunities to assess her condition. [AR 140, 388].  The nature and the
12  extent of his treatment relationship with plaintiff were consistent with the alleged severity of her
13  impairments and with Dr. Gallardo's diagnoses and assessments of her condition.  As noted above, Dr.
14  Gallardo's diagnoses and opinion were well-supported by clinical findings and objective evidence.  Further,
15  Dr. Gallardo was a specialist in the relevant area of orthopedics.

16        Finally, Dr. Gallardo's opinion was consistent with other substantial evidence in the record.  Dr.
17  Steiger, also an orthopedist, conducted an examination and made independent clinical findings.  His
18  diagnoses were similar to those of Dr. Gallardo, and he agreed with Dr. Gallardo that plaintiff's impairments
19  left her with exertional and nonexertional limitations that are not consistent with even sedentary work as
20  defined by the Commissioner. [See AR 331-346].  The record also contains voluminous records from Dr.
21  Glen Justice, a pain management specialist, indicating that plaintiff received intensive pain treatment for
22  her orthopedic impairments over an extended period of time. [See AR 202-209, 352-386, 402-511].  Those
23  treatment records are consistent with the assessments made by Dr. Gallardo and Dr. Steiger.

24        The ALJ rejected Dr. Steiger's opinion on the grounds that Dr. Steiger is "an orthopedic surgeon
25  who usually performs examinations for workers' compensation and personal injury plaintiffs" and his report
26  was "prepared to support litigation," and because his report was "bias[ed]" and inconsistent with the
27  objective medical evidence of record. [AR 25].  Those reasons are legally and factually inadequate.

28

                                              7

In general, the source of a referral for an examination or treatment does not justify rejecting a medical opinion unless "the opinion itself provides grounds for suspicion as to its legitimacy." Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (holding that the claimant's referral to a provider by his lawyer was not a valid reason for discrediting an otherwise credible medical opinion); see Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998) (clarifying that the purpose for which a medical report was obtained does not provide a legitimate basis for rejecting it in the absence of other evidence undermining its credibility). The ALJ has pointed to nothing to support his claim of impermissible bias other than Dr. Steiger's status as a consultative physician retained by plaintiff. Consultative examination reports obtained by the Commissioner, of course, are routinely used as evidence in social security disability determinations. The ALJ also maintains that Dr. Steiger's opinion is inconsistent with "objective medical evidence," but Dr. Steiger cited clinical findings and diagnostic studies to support his opinion [AR 331-332] which, in turn, is consistent with Dr. Gallardo's opinion and the evidence in the record supporting that opinion.

Faced with consistent opinions from plaintiff's treating and examining orthopedists that were supported by medical evidence in the record, the ALJ adopted the contrary opinion of a nonexamining physician based on "unsupported and unwarranted speculation that the other doctors were misrepresenting the claimant's condition or were not qualified to evaluate it." Lester, 81 F.3d at 832. Erickson v. Shalala, 9 F.3d 813, 818 n.7 (9th Cir. 1993) ("[T]he non-examining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician.")(quoting Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

Dr. Haaland's opinion was less probative for other reasons as well. It was issued in November 2004 [AR 125], before plaintiff's multiple auto accidents in 2005. Dr. Gallardo, on the other hand, continued to treat plaintiff in 2005, 2006, and 2007, as he had done for many years. Moreover, Dr. Haaland based his opinion on "objective evidence" consisting of Dr. Gallardo's own examination reports and MRI evidence Dr. Gallardo also considered. [AR 125]. Dr. Haaland's interpretation of evidence also considered by (or generated by) plaintiff's longtime treating specialist does not trump Dr. Gallardo's own interpretation of that evidence.

For all of these reasons, the ALJ erred in rejecting the opinion of Dr. Gallardo in favor of that of Dr. Haaland, and his determination that plaintiff is not disabled is not based on substantial support in the record.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S.  1038 (2000).  The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).   A district court, however,

> should credit evidence that was rejected during the administrative process and remand for
> an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for
> rejecting the evidence; (2) there are no outstanding issues that must be resolved before a
> determination of disability can be made; and (3) it is clear from the record that the ALJ
> would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings."  Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

The ALJ failed to provide legally sufficient reasons for rejecting the consistent treating and examining source opinions, and the record does not contain conflicting medical opinions that could constitute substantial evidence for finding plaintiff not disabled. Therefore, the ALJ was required to credit the treating and examining source opinions as true.  Since it apparent that plaintiff could not work with all of the functional restrictions assessed by Dr. Gallardo and Dr. Steiger in their disability opinions, the ALJ is required to find plaintiff disabled due to her orthopedic impairments.

Further enhancement of the record, however, is needed to establish the date of onset of disability. Plaintiff alleged that she became disabled on November 21, 2003, the date she stopped working after 25 years as a senior account manager with Verizon. [AR 82].  The ALJ, however, noted that there were inconsistencies in the record regarding the reason that plaintiff stopped working on that date. For example,

plaintiff subsequently received unemployment benefits which required her to certify that she was ready and willing to work. [AR 25, 53]. Dr. Gallardo, however, opined that plaintiff was totally disabled in November 2004. [AR 181-183].

On remand, the ALJ is directed to conduct a supplemental hearing, obtain additional testimony regarding the date of onset of disability, including testimony from a medical expert, and to issue a new hearing decision resolving inconsistencies in the evidence concerning the onset date, making appropriate findings, and awarding plaintiff a period of disability and disability insurance benefits accordingly.

**Conclusion**

The Commissioner's decision is not based on substantial evidence in the record and is not free of legal error.   Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

February 12, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge